IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

PAUL SAAVEDRA,

        Plaintiff,

v.                                    No. CIV 02-589 BB/WDS

NATIONAL HISPANIC CULTURAL
CENTER, a State of New Mexico Agency,
BOARD OF DIRECTORS FOR THE
NATIONAL HISPANIC CULTURAL
CENTER, and CARLOS VASQUEZ,
individually,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court for consideration of a motion for partial summary judgment (Doc. 19) and a motion for summary judgment (Doc. 31) filed by Defendants. The Court has reviewed the submissions of the parties and the relevant law. For the reasons set forth below, the motion for partial summary judgment will be denied, and the motion for summary judgment will be denied in part and granted in part.

Plaintiff was employed by Defendant National Hispanic Cultural Center, and was suspended and then dismissed. Plaintiff claims these disciplinary actions were taken in retaliation for a charge of discrimination he had filed with the Human Rights Division of the New Mexico Department of Labor. This lawsuit raises federal claims under the First Amendment and Title VII, 42 U.S.C. § 2000e, and a state claim under the New Mexico Human Rights Act, NMSA § 28-1-1 *et seq.*

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, a court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999). Instead, the nonmoving party must present facts such that under the applicable law, a reasonable jury could find in its favor. *Id.* The Court will analyze Defendants' motions under these standards.

**Motion for Partial Summary Judgment**

Defendants have raised three arguments in support of their motion for partial summary judgment: (1) Plaintiff is time-barred from bringing any claim based on his first charge of discrimination, filed on May 29, 2001; (2) Plaintiff's Title VII claim is premature because Plaintiff filed this lawsuit a week before he received a right-to-sue letter from the EEOC; and (3) this Court is barred from hearing Plaintiff's New Mexico Human Rights Act claim because exclusive jurisdiction to hear that claim rests in state district court.

**May 29, 2001 Claim:** Plaintiff has acknowledged that he is not attempting to litigate any claims arising out of the May 29, 2001 charge of discrimination. This argument, therefore, is moot. The Court does note that Defendants appear to be attempting to prevent any reference to this May 29 charge at trial. This attempt must be rejected, as Plaintiff's claim in this lawsuit is that he was retaliated against for filing the May 29 charge. The May 29 charge, therefore, while not the source of any substantive claims of discrimination, is relevant and in fact crucial to Plaintiff's retaliation claim.

2

**Prematurity of Title VII Claim:**  It is true that Plaintiff filed this lawsuit one week before obtaining a right-to-sue letter from the EEOC, and that such a letter is a mandatory prerequisite for the maintenance of a Title VII lawsuit such as this one.  *See Portis v. Ohio*, 141 F.3d 632, 634-35 (6th Cir. 1998).  However, every circuit that has considered the issue has decided, as did *Portis*, that subsequent receipt of a right-to-sue letter cures the premature-filing defect caused when a lawsuit is filed prior to issuance of the required letter.  *See, e.g., id.; Perkins v. Silverstein,* 939 F.2d 463, 471 (7th Cir. 1991); *Jones v. American State Bank*, 857 F.2d 494, 499-500 (8th Cir. 1988); *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1218 (5th Cir. 1982).  Despite the lack of Tenth Circuit authority directly on point, the Court will follow the overwhelming circuit-level authority noted above and hold that Plaintiff's premature filing of his lawsuit was cured when he received his right-to-sue letter one week later.

**Exclusive Jurisdiction over New Mexico Human Rights Act Claim:**  Defendants maintain the New Mexico Human Rights Act provides that state district courts have exclusive jurisdiction over appeals under that Act.  The language of the Act apparently does so provide.  NMSA 28-1-13(C).  However, the state does not have the power to preclude this Court from exercising its supplemental jurisdiction to hear the claim.  *See Keller v. Bd. of Educ. of City of Albuquerque*, CV 00-1667 (opinion filed 6/12/01) (due to Supremacy Clause, exclusivity provision of Human Rights Act cannot prevent federal court from exercising supplemental jurisdiction over such claims); *see generally Thompkins v. Stuttgart Sch. Dist. # 22*, 787 F.2d 439, 441 (8th Cir. 1986) (federal court's power to exercise pendent jurisdiction has precedence, under Supremacy Clause, over any contrary state law purporting to deny federal-court jurisdiction over a state-law claim).

**Motion for Summary Judgment**

**Title VII and Human Rights Act Claim:** Defendants maintain there is no evidence that Plaintiff's suspension and then dismissal were causally connected to the filing of his May 2001 charge of discrimination. Instead, Defendants maintain, the only evidence is that Plaintiff was disciplined and fired for poor job performance and inappropriate conduct while on duty. Again, in analyzing this issue, the Court must view the evidence in the light most favorable to Plaintiff.

A plaintiff seeking to prove retaliation was the basis for his termination may do so in two ways. The plaintiff may either establish a retaliatory motive directly, or may rely on the burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). If the plaintiff is able to raise an issue of fact on the retaliation question via the direct method, it is unnecessary to utilize the *McDonnell Douglas* framework. *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 550 (10th Cir. 1999); *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557-58 (10th Cir. 1996). In the case before the Court, although Plaintiff has provided some evidence that directly impacts on the retaliation issue, the parties have argued the case under the burden-shifting analysis of *McDonnell Douglas*. The Court, however, will apply the correct analysis.

Plaintiff presented the following direct evidence of retaliatory intent: (1) the decisions to suspend and then terminate Plaintiff were based on information provided by Plaintiff's supervisor, Defendant Vasquez; (2) in April 2001, Vasquez was involved in an incident in which Vasquez accused Plaintiff of inappropriate behavior with a female co-employee, Ms. Miller; (3) as a result of this incident, as well as other problems, Plaintiff filed his May 2001 charge of discrimination; and (4) following the filing of the charge, Vasquez allegedly told Ms. Miller that Plaintiff "should not have done that, he's out of here." [Exh. R, MSJ; Exh. H, Response to MSJ; both exhibits contain

4

testimony of Ms. Miller given at an administrative hearing concerning Plaintiff's termination].[1]  This is direct evidence that Defendant Vasquez intended to terminate Plaintiff's employment because he was angry or upset about the charge of discrimination.

Albeit in the context of their burden-shifting analysis, rather than the direct-evidence framework, Defendants point to several types of evidence that tend to show there was no causal connection between the May 2001 discrimination charge and the subsequent disciplinary actions. First, they point out the five-day suspension did not occur until December 2001, almost seven months after the charge was filed, and the termination did not happen until April 2002, almost a year later. As Plaintiff points out, however, these time periods were not simply barren months in which nothing happened.  Instead, there were indications throughout that Defendant Vasquez was intent on terminating Plaintiff as an employee.  In June 2001, shortly after the discrimination charge was filed, Vasquez called to his office a woman employed as a member of the building cleaning crew, told the woman there had been complaints that Plaintiff was talking to her too much, and asked her if Plaintiff was sexually harassing her.  [Exh. S, MSJ, dep. of Angela Rodriguez]  This attempt to suggest

---

[1] Defendants attack Ms. Miller's testimony on several levels.  First, they point out she was apparently confused about the time frame in which Plaintiff's discrimination charge and Vasquez' alleged response occurred.  Ms. Miller thought the charge was filed a week after the incident, when in fact it was not filed until over a month later.  However, she was quite clear that Vasquez' comments to her were made two weeks after the charge was filed.  The fact that she did not remember the correct time frame may be fodder for cross-examination, but it does not negate her testimony for summary-judgment purposes.  Defendants also maintain Ms. Miller could not know Vasquez was referring to the discrimination charge, rather than the underlying incident itself, when he said Plaintiff "should not have done that."  Again, however, Ms. Miller was certain Vasquez was referring to the charge, and the Court has been provided insufficient facts to allow the Court to decide, as a matter of law, that Ms. Miller's opinion is pure speculation.  Therefore, a conflict in the facts, or in the interpretation of those facts, exists, which the Court may not resolve on summary judgment.

Plaintiff was engaging in harassment could be construed as an attempt to build a termination case against Plaintiff.[2]

Later, in August or September 2001, Defendant Vasquez allegedly told Maria Salas, another employee of the Center, that Plaintiff's days were numbered, and he was on his way out. [Exh. D, Response; Salas administrative hearing testimony p. 6]. In October, Vasquez sent an e-mail to Dr. Helen Lucero which, among other things, warned Dr. Lucero against getting involved in Plaintiff's "grievance" against the Center, stating that it was a delicate personnel matter that could lead to Plaintiff's dismissal or litigation. [Exh. A, Doc. 49, Defs' Mot. in Limine; copy of e-mail]. Less than two months later, Plaintiff was suspended for five days, and a few months later he was terminated. One reasonable inference to draw from this evidence is that Defendant Vasquez' desire to terminate Plaintiff's employment never dissipated following his initial alleged statement to Ms. Miller that Plaintiff should not have filed the discrimination charge, and he was "out of there."

Defendants also argue that Vasquez had no retaliatory motive, but wanted to terminate Plaintiff because of Plaintiff's deficient performance as an employee and the fact that he was causing problems with other employees. It is true that Defendants presented a great amount of evidence detailing Plaintiff's failure to complete projects, instances of his inappropriate behavior at work, and his lack of necessary Spanish-translation skills. In fact, some of this evidence was undisputed.[3]

---

[2]It could also, of course, be viewed as good management, attempting to avoid possible legal problems before they occur. At this point, however, as noted above, the Court must draw all inferences in Plaintiff's favor rather than Defendants'.

[3]For example, Plaintiff admitted his ability to translate Spanish documents is not superior, although he disputed whether such ability was truly a requirement of his position. In addition, Plaintiff did not contest the fact that he sent an intimate e-mail to Ms. Miller, or that he was locked in the library with her with the lights off (although he claimed she was merely consoling him). Also, Plaintiff did not deny that an incident in which, in front of a co-employee, he broke a CD belonging to Vasquez, threw the pieces into Vasquez' office, and punched a "conditioner."

However, even if Defendants may have had ample non-retaliatory reasons to terminate Plaintiff's employment, summary judgment is not appropriate in this case. The presence of direct evidence of a retaliatory motive turns this case into a "mixed motive" case. *See Febres v. Challenger Caribbean Corp.*, 214 F.3d 57, 60 (1st Cir. 2000); *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1512 (10th Cir. 1997). In a mixed-motive case, once the employee presents direct evidence of an improper motive for discharge, the burden shifts to the employer to establish that the same decision would have been reached even without the improper motive. *Febres*. Almost by definition, therefore, a mixed-motive case is almost never susceptible to summary judgment, since a fact-finder must decide whether to believe the direct evidence of improper motive, and if it does so must weigh this evidence against the legally acceptable reasons the employer might have for taking the same action. Furthermore, if retaliation was one of the motivations for Plaintiff's discharge, it does not matter that Defendants might have had other motivations that are legally acceptable. *See Medlock, supra*, 164 F.3d at 552-53 (plaintiff must show retaliation was "a motivating factor" in decision to discharge). For that reason, Defendants' evidence as to Plaintiff's deficiencies as an employee is not conclusive and does not entitle Defendants to summary judgment.

Neither party has suggested that a different analysis applies to Human Rights Act claims than to Title VII claims. The Court will therefore apply the above reasoning to Plaintiff's state-law claim. The Court does note that Defendant Vasquez may not be held individually liable on the Title VII claim, but may be subject to such liability on the Human Rights Act claim. *Compare Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir.1993) (no individual liability under Title VII), *with Sonntag v. Shaw*, 22 P.3d 1188, 1193 (N.M. 2001) (individual may be liable under Human Rights Act).

7

**First Amendment Claim:** The basis of Plaintiff's First Amendment claim is not clear. If Plaintiff is attempting to claim he was retaliated against in violation of his right to free speech, that claim fails because none of his speech activity was protected conduct. His complaints that he was being discriminated against and retaliated against were not protected conduct because they were not matters of public concern. *See David v. City and County of Denver*, 101 F.3d 1244, 1356 & n.2 (10th Cir. 1996) (plaintiff's complaints of discrimination related only to herself were not protected conduct under the First Amendment). There is a one-sentence suggestion in Plaintiff's response brief to the effect that he may be claiming a violation of his right to free association, rather than free speech, since he complains that Vasquez forbade other employees from talking to him. If that is the basis of his First Amendment claim, it is also without merit. According to the Tenth Circuit, two types of association are protected by the Constitution -- choices to enter into certain intimate human relationships, and the right to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, and religious activity. *Tytor v. Bd. of Trustees of Laramie Sch. Dist.*, 1995 WL 111450 (10th Cir., unpublished) (*quoting Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984)). Plaintiff's claim that he was denied the right to associate with his co-workers does not fall into either of these categories. Plaintiff's First Amendment claim, therefore, will be dismissed.

**Conclusion**

Based on the foregoing, the Court will deny Defendants' motions for summary judgment, except as they are directed against Plaintiff's First Amendment claim.

**ORDER**

A Memorandum Opinion having been entered this date, it is hereby ORDERED that Defendants' motion for partial summary judgment (Doc. 19) be, and hereby is, DENIED, and

Defendants' motion for summary judgment (Doc. 31) be, and hereby is, GRANTED IN PART and DENIED IN PART .

Dated this 2nd day of September, 2003.

                                              *Bruce D. Black*
                                              BRUCE D. BLACK
                                              United States District Judge

**ATTORNEYS**:

**For Plaintiff**:
 Donald G. Gilpin

**For Defendant**s:
Marcia E. Lubar